UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

SHIRA NEWMARK,

                                  Plaintiff,                           **OPINION & ORDER**

                -against-                                         **22-cv-10280 (JW)**

MARTIN O'MALLEY,

Acting Commissioner of Social Security,

                                  Defendant.
-----------------------------------------------------------------X

**Jennifer E. Willis, United States Magistrate Judge**:

        Plaintiff Shira Newmark brings this action pursuant to 42 U.S.C. § 405(g) for

judicial review of the final decision of the Acting Commissioner of Social Security (the

"Commissioner") denying her application for disability insurance benefits ("DIB")

under Title II of the Social Security Act ("the Act"). For the reasons stated below,

Plaintiff's motion is **GRANTED.**

## BACKGROUND

**A. Procedural History**

        On February 4, 2021, Plaintiff filed an application for DIB based on disability

as of December 2, 2018. See Social Security Administration ("SSA") Administrative

Record (Dkt. No. 11) (hereinafter "R. ___") at 14. Plaintiff alleges that her disabilities

are based on impairments including Lyme disease, depression, anxiety, and an

underactive thyroid. R. at 286. The claim was initially denied on April 30, 2021, R. at

14, and denied again upon reconsideration on August 9, 2021. Id.

On February 23, 2022, Plaintiff had a hearing before ALJ Kieran McCormack (the "ALJ"), which took place remotely due to the COVID-19 pandemic. R. at 14. In a decision dated March 14, 2022, the ALJ denied Plaintiff's claim, finding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act. R. at 26. The Appeals Council denied Plaintiff's appeal on October 26, 2022. R. at 9.

Plaintiff subsequently commenced this action seeking remand of the ALJ decision and raising three claims of error. Dkt. No. 14 ("Pl. Memo") at 24. Plaintiff argues that (i) the ALJ's RFC analysis was not supported by substantial evidence, (ii) the ALJ failed to properly evaluate opinion evidence, and (iii) the ALJ failed to develop the record. See Pl. Memo.

## B. Personal Background

Ms. Newmark was 40 years old on the alleged disability onset date ("AOD"). R. at 267. Ms. Newmark has a master's degree in special education. R. at 99. Her past relevant employment includes working as a children's tutor, preschool teacher, elementary school teacher, and special education teacher. R. at 19, 287.

## C. Plaintiff's Relevant Medical History

Ms. Newmark's AOD was December 2, 2018, and she has not had substantial gainful employment since that date. R. at 10, 12. Ms. Newmark received numerous treatments during the relevant period, including with (i) Dr. Lionel Bissoon, an integrative health specialist, (ii) Dr. Bernard Raxlen, a Lyme disease specialist, (iii) Dr. Kamau Kokayi, a family medicine specialist, (iv) Dr. Gabrielle Francis, a natural medicine specialist, (v) Dr. Olivier Frankenberger, a cardiologist, (vi) Jenny Kaplan,

a licensed clinical social worker ("LCSW"), and (vii) Dr. Susan Pinco, a psychologist. Pl. Memo at 5-8; R. at 291, 328, 421-425, 430-431, 450, 463-465, and 591-598. While Ms. Newmark saw various physicians, Ms. Newmark's papers note that the relevant treating sources are primarily Dr. Raxlen and Dr. Francis. Pl. Memo at 8-9.

After filing for DIB in 2021, Ms. Newmark was evaluated by consultative physicians, including: Dr. Rita Figueroa, who performed an internal medicine consultative examination and Dr. Alison Murphy, who performed a consultative psychiatric evaluation. R. at 452-456, 458-461. The agency also relied on Drs. Hennessey and Fernandez as psychiatric consultants, and Drs. Ghandi and Siddiqui for medical consultations. R. at 116-117, 136-137, 119-123, and 140-145. The relevant treatments and opinions are recounted below.

### a. Dr. Raxlen – Referral and Lyme Disease Treatment

From May 2019 to June 2019, Ms. Newmark saw Dr. Bissoon for symptoms such as sinusitis, fatigue, cold intolerance, and hearing sensitivity. R. at 645-646. After multiple rounds of tests, Dr. Bissoon referred Ms. Newmark to Dr. Bernard Raxlen, a Lyme disease specialist, when her tests came back positive for Lyme disease. R. at 328.

Ms. Newmark began receiving treatment from Dr. Raxlen in June 2019.  R. at 450. Treatment records indicate that she saw Dr. Raxlen on several dates from June 2019 to June 2021. R. at 421-423; 474; 483-486. Ms. Newmark's sessions with Dr. Raxlen were a mix of in-person visits, as well as some phone and video consultations due to the COVID-19 pandemic. Id.

3

According to Dr. Raxlen's notes, Ms. Newmark consistently complained of motion sickness, severe fatigue, headaches, and occasional shortness of breath. R. at 424-425; 485-487. After the onset of the COVID-19 pandemic in 2020, Ms. Newmark also reported to Dr. Raxlen that she experienced anxiety and depression, and felt like she "need[ed] to move." R. at 485. By June 2021, Ms. Newmark reportedly experienced other symptoms including brain fog, photo-sensitivity, skin sensitivity, non-restorative sleep, trouble reading, intermittent light-headedness, weight gain, and chronic headaches. R. at 421; 450; 474. However, Dr. Raxlen noted that she was still able to engage in some physical activity, such as dancing and biking. R. at 474. Dr. Raxlen provided medical source statements regarding Ms. Newmark in November 2020 and June 2021. R. at 348-353; 475-479.

In November 2020, Dr. Raxlen diagnosed Ms. Newmark with Lyme disease. R. at 348. The November 2020 statement noted persistent fatigue. R. at 348. It stated that Ms. Newmark could walk 10 blocks, but she could only sit, stand, and walk for a total of two hours in an eight-hour day. R. at 351. The statement further indicated that Ms. Newmark would need unscheduled breaks of 10 to 15 minutes every two hours, and she could rarely lift up to 10 pounds. Id. Dr. Raxlen also noted that Ms. Newmark's condition interfered with her attention and concentration occasionally (up to 1/3 of a workday), R. at 350, and the condition could cause Ms. Newmark to be absent from work more than three times a month. R. at 352.

In June 2021, Dr. Raxlen identified that Ms. Newmark had both Epstein-Barr virus and Lyme disease. R. at 475. Dr. Raxlen noted that Ms. Newmark's symptoms

4

impacted her attention and concentration frequently (up to 2/3 of the day). R. at 477. The June 2021 statement also indicated that Ms. Newmark was capable of low stress jobs on a part time basis (two hours a week for the summer). R. at 478. Finally, Dr. Raxlen concluded that Ms. Newmark was likely to be absent from work more than three times a month. R. at 479.

### b.  Dr. Francis – Natural Medicinal Treatment and Notes

From November 2019 to June 2021, Ms. Newmark was treated by Dr. Gabrielle Francis, a natural medicine specialist at the Herban Alchemist. R. at 590. While in the care of Dr. Francis, Ms. Newmark received chiropractic care, medical massages, cupping, acupuncture, and infrared sauna exposure to treat symptoms including muscle pain, exhaustion, headaches, brain fog, and nausea. Id. Dr. Francis's notes indicated that Ms. Newmark "would not be able to engage in any work without the flexibility to come to work late, leave early, miss time unpredictably and sit, stand and move around throughout the day." Id.

### c.  Other Treating Physicians

Between July 2019 and October 2019, Ms. Newmark saw Dr. Kokayi, who noted that Plaintiff reported shortness of breath, fatigue and muscle weakness. R. at 463, 474. In April 2020, Ms. Newmark saw Dr. Frankenberger and reported chest pain. R. at 430-434. Dr. Frankenberger recommended treatment with an anti-inflammatory such as Motrin. R. at 431.

After filing for DIB on February 4, 2021, Ms. Newmark was assessed by various consultative physicians.

### d.  Dr. Figueroa - Internal Medicine Consultative Examination

On March 31, 2021, Dr. Rita Figueroa performed an internal medicine consultative examination.  R. at 458-461. Dr. Figueroa opined that Ms. Newmark would have difficulty with "activities requiring moderate to severe exertion," and Ms. Newmark should avoid pulmonary irritants. R. at 461. Dr. Figueroa further noted that Ms. Newmark appeared to be drained, and exhibited slow thinking and slow reaction times.  R. at 459. Finally, Dr. Figueroa stated that Ms. Newmark performed exercises slowly, but had a normal gait and stance, and could walk and stand without difficulty or assistive devices. R. at 459-460.

### e.  Drs. Gandhi and Siddiqui – Medical Consultations

On April 23, 2021, Dr. Gandhi issued a physical residual functional capacity ("RFC") assessment of Ms. Newmark. R. at 119-123. Dr. Gandhi found that with normal breaks Ms. Newmark could stand, sit, or walk for a total of about six hours in an eight hour day. R. at 120. Dr. Gandhi also noted that Ms. Newmark could frequently lift and/or carry 10 pounds qualifying her for light work. R. at 18, 119-122. The assessment noted that Ms. Newmark should avoid exposure to fumes, odors, dust, gases, poor ventilation, and hazards. R. at 121. On July 21, 2021, Dr. Siddiqui reported an RFC evaluation of Ms. Newmark. R. at 140-145. Dr. Siddiqui's assessment mirrored Dr. Gandhi's findings that Ms. Newmark could sit/stand/walk for six hours, carry 10 pounds frequently, and should avoid exposure to environmental irritants. Id.

6

**a. Jenny Kaplan, LCSW and Dr. Susan Pinco, MSSW – Mental Health Treatment**

With respect to Plaintiff's mental health, from June 2019 to April 2020, Ms. Newmark saw Dr. Susan Pinco, at Integrative Psychotherapy LLC. R. at 291. Dr. Pinco's treatment notes are not included in the Record.

Ms. Newmark saw Jenny Kaplan, LCSW, from November 2020 through February 2022. R. at 20. In February 2022, Kaplan diagnosed Ms. Newmark with adjustment disorder with anxiety. R. at 618.  Ms. Newmark reported to Kaplan that chronic Lyme disease "made it difficult to work and increased her obsessive thoughts about getting sicker and weaker[,]" along with compulsions around health and hygiene.  R. at 619.

**b. Dr. Murphy – Psychiatric Evaluation**

On March 11, 2021, Dr. Alison Murphy, PhD, performed a consultative psychiatric evaluation of Ms. Newmark and issued an opinion. R. at 452-456. While the mental status exam was normal, Dr. Murphy's evaluation indicated some limitations in Ms. Newmark's capacity. Id. Dr. Murphy opined that Ms. Newmark had moderate limitation in her ability to interact with others, sustain an ordinary routine, and maintain regular attendance at work. R. at 14, 452-456.  However, Dr. Murphy also opined that Ms. Newmark had no limitations in her ability to understand, remember, or apply complex instructions. R. at 454. Dr. Murphy further found that Ms. Newmark's attention, concentration, and memory skills were intact, and she exhibited appropriate insight, judgment, and cognitive functioning. Id.

### c. Drs. Hennessey and Fernandez – Psychiatric Consultations

On March 29, 2021, Dr. Hennessey issued functional assessments of Ms. Newmark based on the available record. R. at 116-117. Dr. Hennessy found that Plaintiff's mental impairments were non-severe. Id.   Subsequently, on August 21, 2021, Dr. Fernandez issued functional assessments of Ms. Newmark and also found her mental impairments to be non-severe. R. at 136-137.

### D. The Hearing

On February 23, 2022, Plaintiff appeared for a remote hearing before ALJ Kieran McCormack. R. at 32. On the record during the hearing, Plaintiff's then-counsel was asked whether the record was complete for the purpose of "enough information to adjudicate the claim." R. at 39. Plaintiff's then-counsel responded, "I do believe that the record is complete for that purpose and that the material that's still outstanding would be contributory as cumulative more[]so than new earth -- for lack of a better word -- earth-shattering information." Id.

At the hearing, Margaret Heck testified as a vocational expert ("VE").  R. at 48, 54, 64, summary at 65.

### a. Plaintiff's Testimony

Plaintiff, at the time of the hearing, was 5'4" and weighed 188 pounds. R. at 286. Plaintiff was working one hour per day, five days a week as a one-on-one tutor for children with special needs. R. at 67-70.

Plaintiff testified that she was bitten by a tick in July 2011, years before she tested positive for Lyme disease in June 2019, and she had been living with symptoms prior to her diagnosis. R. at 71-73. Regarding her physical symptoms, Plaintiff stated

8

that she experienced chronic fatigue, inflamed joints and muscles, dizziness, headaches and muscle aches, and a dry cough. R. at 75-77. When asked about her ability to be active, Plaintiff responded that she couldn't be active for long periods of time, and she limited activities like driving or light errands to 15 minutes, R. at 78, and she was able to walk her dog around the block twice a day. R. at 79. Plaintiff further testified that she often experienced fatigued after tutoring and fell asleep three or four times per day. R. at 71, 80.

Beyond these physical limitations, Plaintiff described experiencing brain fog, haziness, and issues with concentration and memory. R. at 81, 85, 91. Plaintiff testified that her brain fog and haziness were worse in the mornings. R. at 85. She mentioned that concentration was difficult for her, and she needed breaks after about 30 minutes of trying to concentrate on paperwork due to fatigue. R. at 92.  Plaintiff testified that while her short term memory was "pretty good," her long term memory was "hazy."  R. at 91. With respect to her social life, Plaintiff stated that socialization was exhausting, and her interactions were "very limited," R. at 92.

At the time of the hearing, Plaintiff's treatment consisted of thyroid medication, CBD cream for the joint pain, and essential oils for the headaches. R. at 81-82, 85. Plaintiff noted that she had stopped taking antibiotics for Lyme disease due to the side effects, R. at 96, and had switched from medical marijuana to treat the chronic pain to hemp-based THC. R. at 94-95.

**b. VE Testimony**

The ALJ asked the VE to classify Plaintiff's past work, including as a children's tutor, preschool teacher, and elementary school teacher. R. at 19-20, 48, 54, 64-65. The VE classified Plaintiff's past jobs in the light and skilled range. Id.

The ALJ then posed the first hypothetical asking whether an individual could perform Plaintiff's past relevant work, inviting the VE to assume the hypothetical individual could perform light work, but needed to limit exposure to airborne irritants (fumes, odors, dust, gases, or smoke), unprotected heights, and machinery. R. at 100. The VE responded that such a person could perform Plaintiff's past work, as well as alternate jobs including companion, gate guard, and front desk clerk. R. at 100-101.

Next, the ALJ asked the VE a second hypothetical, requiring the VE to add an additional limitation of at least three absences each month to the first hypothetical. R. at 101-102. The VE stated that in such hypothetical, an individual could not perform Plaintiff's past relevant work because employers generally tolerate one to two unexcused absences monthly. R. at 102. The VE further opined that all competitive work was precluded in the second hypothetical and the positions identified in hypothetical one would not be viable. R. at 101-102. The VE noted that the Dictionary of Occupational Titles did not include language regarding absences or absenteeism, so the VE's opinion with respect to hypothetical two was based upon her professional knowledge and experience. R. at 102.

The VE further opined that an employer would tolerate a worker being off task up to 15% of the workday, but was unlikely to allow a long unscheduled break. R. at 104. The VE testified that if an individual took cumulative breaks under 15% then

competitive employment would not be eliminated, but if a person took an unscheduled 49-minute break during a seven hour day (~12%), it could be frowned upon and lead to termination. R. at 104-105.

### E. The ALJ's Decision

The ALJ issued his decision on March 14, 2022, denying Plaintiff's disability claims. R. at 26. The ALJ found that based on the record, Plaintiff had not been disabled within the meaning of the Act since the AOD. R. at 11.

At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the AOD on December 2, 2018. R. at 12.

At step two, the ALJ found that Plaintiff's severe impairments were Lyme Disease, underactive thyroid, and asthma. R. at 13. However, the ALJ found that Plaintiff's mental impairments were not severe. R. at 13, 15. With respect to Plaintiff's mental impairments, the ALJ found "mild limitation" in Plaintiff's functional ability to concentrate, persist, and maintain pace based on her testimony about difficulty maintaining focus. R. at 13. The ALJ noted this limitation "appeared related to reported fatigue." Id. The ALJ also found a "mild limitation" around adapting or managing oneself. Id. The ALJ noted Plaintiff's excessive apprehension and worry with respect to this limitation. Id. The ALJ found no limitations in Plaintiff's ability to understand, remember, and apply information or her ability to interact with others. Id. The ALJ did note that plaintiff's testimony about limited socialization "appeared to be due to fatigue instead of mental disfunction." Id. The ALJ concluded that because Plaintiff's mental impairments caused no more than

"mild" limitation, and the evidence did not indicate more than minimal limitations in her ability to do basic work activities, the mental impairments were non-severe. Id.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or equals the severity under 20 C.F.R. 404, Subpart P, Appendix 1. R. at 15.

At step four, the ALJ found that despite Plaintiff's impairments, Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), except that she needed to work without concentrated exposure to airborne irritants and machinery. R. at 15.

In support of the findings at step four, the ALJ recounted that Plaintiff experienced inflamed joints and muscles, chronic fatigue, dry cough, dizziness, and headaches due to Lyme disease.  R. at 16. The ALJ also noted that the underactive thyroid caused fatigue and Plaintiff often needed to take naps during the day and tried to limit activities to 15 minutes. Id. The ALJ then concluded that although Plaintiff's impairments could reasonably cause the alleged symptoms, the "intensity, persistence[,] and limiting effects" of the symptoms were not shown to be disabling in nature. Id.

The ALJ stated that consultative examiner Dr. Figueroa opined that Plaintiff should avoid pulmonary irritants, and the ALJ found that opinion persuasive and factored it into Plaintiff's RFC determination. R. at 17-18. The ALJ recounted that agency consultants Drs. Gandhi and Siddiqui also opined that Plaintiff was limited to light work and should avoid exposure to hazards. R. at 18. The ALJ noted that Drs.

Gandhi and Siddiqui's opined limitations were consistent with Plaintiff's testimony regarding aches and fatigue, so the ALJ found those physicians persuasive and factored their restrictions into the RFC assessment. Id.

With respect to Dr. Raxlen, the ALJ noted that Dr. Raxlen opined that Plaintiff could rarely sit, stand, and walk two hours in an eight-hour workday, would need to take unscheduled breaks, would need to avoid dust, and would be absent more than three times a month. R. at 18. The ALJ did not find Dr. Raxlen's opinions persuasive because they "contained only laboratory reports and summaries of the [Plaintiff's] own reports," rather than "objective clinical findings." Id. The ALJ further noted that Dr. Raxlen's opinions were not consistent with the remainder of the record noting normal gait, ability to walk without difficulty, and normal musculoskeletal functioning. Id.

The ALJ similarly found that Dr. Francis's opinions were not consistent with the rest of the evidence and did not contain objective clinical findings, but only a summary of Plaintiff's accounts. R. at 18-19.

Finally, the ALJ noted that during the consultative examination in April 2021, Plaintiff reported cooking twice per week, some cleaning, and laundry. R. at 19. The ALJ reasoned that Plaintiff reported a "broad range of daily living activities consistent with a capacity for light work." Id.

At step five, the ALJ, relying on the VE testimony, found that a person of Plaintiff's background with her RFC could perform her past relevant work and other

jobs. R. at 20-22. Therefore, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. R. at 22.

## **LEGAL STANDARD**

### A. Standard of Review

In reviewing a final decision of the SSA, "[t]he district court must determine whether the Commissioner's final decision applied the correct legal standards and whether the decision is supported by substantial evidence." Intonato v. Colvin, No. 13-CV-3426 (JLC), 2014 WL 3893288, at *6 (S.D.N.Y. Aug. 7, 2014) (citing Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004)). The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lamay v. Commissioner of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). If a reviewing court finds that there is substantial evidence supporting the Commissioner's decision, it must be upheld. See Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).

"On the basis of this review, the court may 'enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" <u>Intonato v. Colvin</u>, 2014 WL 3893288, at *6 (quoting 42 U.S.C. § 405(g)). "When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand is warranted "for further development of the evidence" or for an explanation of the ALJ's reasoning. <u>Pratts v. Chater</u>, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotations omitted). Additionally, an ALJ's "[f]ailure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." <u>Kohler v. Astrue</u>, 546 F. 3d 260,265 (2d Cir. 2008) (internal citations omitted).

## B. Five-Step Sequential Evaluation Process

Under the Social Security Act, a claimant is disabled if they lack the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." <u>Id.</u> at § 423(d)(2)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.
5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. See Rolon v. Commissioner of Soc. Sec., 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014)(citing Shaw v. Chater, 221 F.3d 126, 132 (2d Cir.2000)); see also 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; then the burden shifts to the Commissioner at step five. See Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. See Butts v. Barnhart, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## **DISCUSSION**

Plaintiff argues that the ALJ's decision should be remanded because (i) the ALJ failed to properly consider all appropriate limitations when formulating the

RFC, (ii) the ALJ did not properly evaluate medical opinion evidence, and (iii) the ALJ failed to develop the Record. Pl. Memo at 10-24. Defendant counters that substantial evidence supports the ALJ's RFC findings and the ALJ's disability determination, and the Record was adequately developed. Dkt. No. 15 ("Opp.") at 11-21.  Because the Court finds reversible error, agreeing with Plaintiff's first argument, the Court declines to reach the other two arguments.

## A. Whether the ALJ's RFC Finding is Supported by Substantial Evidence

Plaintiff does not contest the ALJ's RFC finding of light work, but instead argues that fatigue, and its effect on absenteeism, should be separately accounted for. Id. at 14.

Defendant counters that the ALJ found Drs. Gandhi and Siddiqui persuasive on the point that Plaintiff was capable of performing light work without off-task limitations and that such light work would be sufficient to mitigate Plaintiff's limitations, including fatigue. R. at 18; Opp. at 26. Defendant further asserted that the ALJ may "choose between properly submitted medical opinions," as he did in this case. Opp. at 27 (citing Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998)). Third, Defendant argues that a failure to consider the effects of fatigue is "harmless error". Dkt. No. 15 at 26-27 (citing Collado v. Kijakazi, No. 22-CV-11112-JLC, 2022 WL 1960612, at *10 (S.D.N.Y. June 6, 2022)). Finally, Defendant argues that deference is warranted where the ALJ resolves conflicting evidence under the substantial evidence standard. Id.  (citing Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998)).

On balance, the Court agrees with Plaintiff that the ALJ failed to evaluate Plaintiff's chronic fatigue as a physical limitation in the RFC. Id. at 14-16. Three cases support the assertion that the ALJ failed to properly consider fatigue in the RFC.

First, in Gutierrez, the court found that the ALJ's determination was not supported by substantial evidence where the ALJ relied on the assessment of a doctor who acknowledged that plaintiff's fatigue resulted in "some physical limitations," but the ALJ did not "set forth with sufficient specificity" whether "those accepted limitations" were "supported by substantial evidence." See Gutierrez v. Colvin, No. 15 CIV. 3181 (RWS), 2016 WL 3746884, at *6 (S.D.N.Y. July 7, 2016). Because the ALJ in Gutierrez determined the applicant was capable of medium work "in a conclusory fashion without discussion," the ALJ's conclusions were deemed "unsupported by substantial evidence." Gutierrez, 2016 WL 3746884, at *5. The court there held "[w]hile the decision as to whether Plaintiff is precluded or capable of particular work is reserved to the ALJ, the functional limitations must be directly addressed. **Failure to expressly consider all the effects of Plaintiff's fatigue on Plaintiff's ability to work renders the analysis incomplete, and the case must be remanded for further proceedings**." See Gutierrez, 2016 WL 3746884, at *5-6 (emphasis added).

Second, a District of Vermont case notes the ALJ must "specifically address limitations or conditions for which there is substantial record evidence." Frank G. v. Comm'r of Soc. Sec., No. 5:17-CV-103, 2019 WL 430887, at *5 (D. Vt. Feb. 4, 2019)

18

(quoting another source). In that case, the court remanded a decision where the ALJ did not specifically address the plaintiff's alleged problems with head and neck movements.

Third is <u>Aurilio v. Berryhill</u>, No. 3:18-CV-00587 (MPS), 2019 WL 4438196, at *9 (D. Conn. Sept. 16, 2019). Pl. Memo at 16. In that case, the court remanded an action where the ALJ found that "the frequency and intensity of [plaintiff's] exercise regimen militate[d] against her allegations of fatigue and joint pain[,]" but there was no evidence of the "intensity" of plaintiff's exercise regimen in the record. <u>Id.</u> at *9-10. Moreover, the court found the ALJ failed to develop the record when he improperly concluded that the applicant's fatigue would not cause her "to be absent from work four or more times per month" without any supporting evidence. <u>Aurilio v. Berryhill</u>, No. 3:18-CV-00587 (MPS), 2019 WL 4438196, at *9 (D. Conn. Sept. 16, 2019).

Similar to <u>Aurilio</u>, <u>Frank G.</u>, and <u>Gutierrez</u>, the RFC here did not consider all the limitations resulting from fatigue even though fatigue is a typical symptom of Lyme Disease, Epstein-Barr virus, and thyroid disorder. When a claimant asserts a disability based on Lyme Disease, Epstein-Barr virus, or a thyroid disorder, the ALJ should consider all the effects of fatigue.

Just like in <u>Aurilio</u>, the ALJ here did not fully account for the effect of fatigue on absenteeism, and the conclusion that fatigue would cause her to be "off-task" no more than "15% of the time" was without sufficient supporting evidence. <u>Aurilio v.</u>

Berryhill, No. 3:18-CV-00587 (MPS), 2019 WL 4438196, at *9 (D. Conn. Sept. 16, 2019).

Defendant's citation to Collado does not save the RFC. Dkt. No. 15 at 26-27. Collado holds that it is harmless error to not specifically include a discussion regarding off-task time and absences if, and only if, the substantial evidence in the record already supports the ALJ's conclusion that the claimant can maintain regular attendance. Dkt. No. 15 at 26-27 (citing Collado v. Kijakazi, No. 22-CV-11112-JLC, 2022 WL 1960612, at *10 (S.D.N.Y. June 6, 2022)). Here, there is not enough in the record to establish that a specific analysis of the effect of fatigue on absenteeism was unnecessary. This failure to specifically discuss all the effects of fatigue dooms the RFC.

Thus, this case is on all fours with Gutierrez and Aurilio. Therefore, due to the "failure to expressly consider all the effects of Plaintiff's fatigue…the case must be remanded for further proceedings." See Gutierrez, 2016 WL 3746884, at *5-6.

For the foregoing reasons, Plaintiff's Motion (Dkt. No. 13) is **GRANTED.** This case is remanded to the Social Security Administration for further proceedings.

**The Clerk of the Court is respectfully requested to close the case.**

SO ORDERED.

DATED:      New York, New York
            March 26, 2024

_Jennifer E. Willis_
JENNIFER E. WILLIS
United States Magistrate Judge